1  JOSHUA A. SLIKER, ESQ.
2  Nevada Bar No. 12493
   **JACKSON LEWIS P.C.**
3  300 S. Fourth Street, Suite 900
   Las Vegas, Nevada 89101
4  Telephone: (702) 921-2460
   E-Mail: joshua.sliker@jacksonlewis.com
5
6  *Attorneys for Plaintiff*
   *Digital Alpha Advisors, LLC*
7
8              **UNITED STATES DISTRICT COURT**
9                   **DISTRICT OF NEVADA**
10 DIGITAL ALPHA ADVISORS, LLC, a        Case No.: 2:23-cv-01339
   Delaware limited liability company,
11
                    Plaintiff,
12                                        **COMPLAINT AND REQUEST FOR**
        vs.                              **INJUNCTIVE RELIEF**
13 RAHIM LADAK, an individual,
14                  Defendant.
15

16      Plaintiff DIGITAL ALPHA ADVISORS, LLC., ("Plaintiff" or "Digital Alpha"), by and
17 through its undersigned counsel, hereby brings this action against Defendant Rahim Ladak
18 ("Defendant" or "Ladak") and seeks a temporary restraining order and injunctive relief. Digital
19 Alpha is informed and believes, and based thereon alleges, as follows:
20                              **PARTIES**
21      1.      At all times mentioned herein, Plaintiff Digital Alpha Advisors, LLC was and is a
22 limited liability company organized under the laws of the State of Delaware with its principal place
23 of business in Henderson, Nevada.
24      2.      At all times mentioned herein, and to the best of Plaintiff's knowledge, Defendant
25 Rahim Ladak was and is a resident of Texas residing in Austin, Texas.
26
27
28

JACKSON LEWIS P.C.
LAS VEGAS

1

**JURISDICTION AND VENUE**

3.     Digital Alpha's headquarters is located in Henderson, Nevada. All contractual agreements are subject to Nevada law, including Ladak's Employment Agreement.

4.     The Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as Digital Alpha's claims arise under federal law including the Defend Trade Secrets Act (18 U.S.C. § 1831, *et seq.*) ("DTSA").

5.     This Court has supplemental jurisdiction over any related state law claims in this dispute pursuant to 28 U.S.C. § 1367 because the claims are substantially related to Digital Alpha's federal claims.

6.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Plaintiff is headquartered in Henderson, Nevada, and because the parties have consented to exclusive jurisdiction in Nevada to adjudicate non-arbitrable claims including the enforcement of restrictive covenants as sought in this action. *See Chan v. Soc'y Expeditions, Inc.*, 39 F.3d 1398, 1406-1407 (9th Cir. 1994) (A party can consent to personal jurisdiction through a forum selection clause in a contract.).

**FACTUAL ALLEGATIONS**

**A.  Digital Alpha's Business.**

7.     Digital Alpha is an alternative asset manager focused on making private equity investments in digital infrastructure, with a particular focus on Next Generation Networks (NGNs), the cloud and the Internet of Things (IoT)/Smart Cities. Digital Alpha also provides investment advisory services to investors, including identifying and evaluating investment opportunities, negotiating investments, managing and monitoring investments, and achieving dispositions for investments.

8.     Digital Alpha has invested significant resources, time, and money into research, business development, market analysis, marketing and advertising, and building relationships with its investors as well as the companies in which it invests and advises (referred to as "portfolio

companies"[1]). Through these efforts, Plaintiff has developed confidential, proprietary, and trade secret information including primary market research and expertise, commercial due diligence and underwriting analyses, valuation frameworks and analyses and legal terms and conditions negotiated as part of acquisitions and divestitures of portfolio companies. In addition, Digital Alpha's confidential, proprietary, and trade secret information includes information received, compiled and developed from its portfolio companies' customer lists, information, pricing, formulas, compilations, techniques, systems, designs, intellectual property and other such information.

9.      If this proprietary confidential and trade secret protected information was provided to a competitor or was used by Ladak to compete with or impair or interfere with Digital Alpha's business or that of its portfolio companies' business, it would be exceptionally harmful to the business interests, reputation, and goodwill of Digital Alpha and its portfolio companies.

**B.  Ladak's Employment with Digital Alpha.**

10.     On June 26, 2021, Digital Alpha hired Ladak as an Associate. Because Ladak is a Canadian national, Digital Alpha sponsored and paid for him to receive the necessary governmental authorizations to work in the United States. Ladak began working at Digital Alpha on or about August 9, 2021.

11.     In connection with his employment, Digital Alpha purchased a new laptop computer and issued it to Ladak to use for work (Serial No. BNT01B3). Subsequently, in or about February 2023, Ladak purchased a Dell laptop computer to use for work and sought reimbursement from Digital Alpha. When asked if the purchase had been approved, Ladak did not respond nor submit the necessary approval. Thus, upon information and belief, Ladak has used two laptops for Digital Alpha work.

---

[1] A "portfolio company" is an operating business that Digital Alpha or one of its investment funds has invested in and/or for which Digital Alpha provides advisory services. By way of illustration, assume Roadrunner Corp. sells widgets. Acme Corp. decides to invest $100,000 in Roadrunner Corp. in exchange for a portion of the equity of Roadrunner Corp. To maximize the value of its investment and ensure Roadrunner's success in the marketplace, Acme joins Roadrunner's board of directors, provides strategic guidance on increasing revenue and reducing costs, and offers advice on Roadrunner's future growth. Roadrunner Corp. is a portfolio company.

12.     As an Associate, Ladak was responsible for conducting industry and market research, assisting Digital Alpha portfolio companies, and analyzing potential investment opportunities on behalf of Digital Alpha. Ladak was attached to Digital Alpha's San Francisco, California office, but failed to relocate as instructed and worked remotely from Austin, Texas.

13.     As a condition of his employment, on June 29, 2021, Ladak signed an at-will Employment Agreement containing contractual obligations including confidentiality and non-disclosure requirements, non-solicitation provisions, and a covenant not to compete (the "Restrictive Covenants"). A true and correct copy of Ladak's Employment Agreement is attached as **Exhibit 1**.

14.     The confidentiality covenant provided that "during your employment and at any time thereafter, you will not, in whole or in part, directly or indirectly, disclose, use or divulge or allow to be disclosed, used or divulged to any person or entity any Confidential Information for any reason or purpose whatsoever, other than in the course of your assigned duties and for the benefit of the Company and in accordance with Company policies applicable to you concerning disclosure of Confidential Information." Ex. 1.

15.     As defined by the Employment Agreement, "Confidential Information" means "non-public, proprietary, confidential and trade secret information of the Company and its affiliates and other information of a business, financial, marketing, technical or other nature relating to the business of the Company and its affiliates and their investors, portfolio companies and vendors, including, without limitation, any plans or strategies, customer and client lists, prospective customer or client names, employee records, financial statements and projections, know-how, pricing policies, operational methods, methods of doing business, technical processes, formulae, designs and design projects, inventions, computer hardware, software programs, business plans and projects pertaining to the Company and its affiliates, and including any information of others that the Company has agreed to keep confidential." Ex. 1.

16.     The Employment Agreement also provides that Ladak and Digital Alpha will arbitrate all disputes between them arising out of Ladak's employment or the termination thereof, except for an action by Digital Alpha to enforce the Restrictive Covenants. Further, Ladak agreed

to be bound to Nevada law regardless of personal domicile, and that any action not subject to arbitration was subject to "exclusive jurisdiction in the State of Nevada."

17.     In addition, Ladak also agreed to comply with Digital Alpha's Compliance Manual, which contains policies and procedures applicable to all employees, including the Protecting Confidential Information policy, Electronic Communications policy, and other policies, procedures and practices pertaining to the protection of Confidential Information and information security. Further and specifically, Digital Alpha's Electronic Communications policy provides (a) that all software, hardware, files, and portable devices owned by Digital Alpha, computer networks, and other information technology equipment and communication systems are the property of Digital Alpha; (b) that if an employee leaves the company all electronic resources must be promptly returned to the company; (c) that the use of personal devices for business purposes is in violation of federal security laws and is prohibited by Digital Alpha; and (d) that communications and devices may be searched by Digital Alpha.

18.     Access to certain aspects of Digital Alpha's Confidential Information and trade secrets was necessary for Ladak to complete his job successfully and is updated periodically whenever there are new developments either internally or from portfolio companies, vendors, or partners. Digital Alpha only provides the Confidential Information and trade secrets after the employee signs the Employment Agreement and only through secured methods, including password protected company equipment and via password protected access to the Digital Alpha database.

**C. Ladak's Removal of Trade Secrets and Other Confidential and Proprietary Information.**

19.     Throughout his tenure at Digital Alpha, Ladak's work performance ranged from unremarkable to poor, such that in January 2023, he did not meet the requirements to qualify for his full annual bonus. He struggled to meet basic expectations. For example, Digital Alpha told him on multiple occasions that he was expected to relocate to San Francisco, California, his assigned office, to be co-located with his leaders and team members. Each time the issue was raised, he promised he would move, but never did. Further, during virtual team meetings, he was consistently

the only team member who refused to turn on video despite Digital Alpha's expectation that he do so. Ultimately, despite repeated coaching, feedback and patience on the part of Digital Alpha, Ladak's performance did not improve.

20.     On August 11, 2023, Digital Alpha met with Ladak to deliver his annual performance review and to notify him that it had decided to terminate his employment effective August 25, 2023. Digital Alpha expected Ladak, and Ladak represented he would, stay on with the company approximately two additional weeks (through August 25, 2023) to wind down his involvement with any projects and to ensure continuity. In that same meeting, Digital Alpha directed Ladak to return all company equipment and property back to Digital Alpha. It also reminded Ladak of his contractual obligations including the confidentiality and non-disclosure requirements.

21.     On August 13, 2023, Digital Alpha's document management system triggered an alert based on anomalous activity associated with Ladak's corporate user account. Upon review, Plaintiff learned that between August 10 and August 23, 2023, Ladak had downloaded approximately 794 files[2] containing some of Digital Alpha's most sensitive trade secrets and confidential and proprietary information, many of which pertained to portfolio companies, projects, or other Digital Alpha activities Ladak was never involved with nor had any business reason to access.

22.     The files Ladak improperly downloaded contained sensitive trade secrets, and confidential and proprietary information not only belonging to Digital Alpha, but also to a number of its portfolio companies. For example, Ladak downloaded the following information:

      a.     Information on Digital Alpha's portfolio companies including valuations, historic and projected financial reports, balance sheet information, detailed capitalization table outlining ownership and governance rights, comparative financial analyses, financial transaction data, and discounted cash flow analysis – all of which is valuable to other private equity firms and current or future limited partnerships. This

---

[2] For comparison, over the two months preceding his termination, Ladak had downloaded an average of just 13 files per week.

information, which is not shared publicly and maintained confidentiality by Digital Alpha, was downloaded on or about August 10 and 11, 2023.

b.  Investment Committee Memos prepared by Digital Alpha on completed investments (many of which Ladak had no involvement with) that included details regarding underwriting criteria, investment thesis and strategy, financial projections, and proprietary assessments of risk-return potential. This information, which would be extremely valuable to other private equity firms and is never shared outside of Digital Alpha, was downloaded on August 12, 2023 – after Ladak was notified of his termination.

c.  Board of Directors reports (many of which were not related to projects Ladak was involved with or worked on) from portfolio companies shared, confidentially, to Digital Alpha, and including information on the portfolio companies' financial performance, on-going capital raising and corresponding valuations, top customers or vendors including key contractual terms and provisions key operational metrics (including Objectives and Key Results (OKRs), Key Performance Indicators (KPIs), etc.) and strategic direction of the portfolio companies (including merger and acquisition targets and exit planning), information on their key employees, including compensation, management equity and retention matters. This information, all of which is kept confidential, would be valuable to Digital Alpha's competitors as well as the competitors of the portfolio companies, was downloaded on August 12, 2023 – after Ladak was notified of his termination.

d.  Confidential documents related to deals, investments, and transactions negotiated by Digital Alpha, including economic terms, transactional structure, and key negotiated terms or leverage. This information, all of which would be valuable to Digital Alpha's competitors or potential future acquirers of Digital Alpha's portfolio companies, was downloaded on August 17 and 23, 2023 – after Ladak was notified of his termination.

23.     Upon receipt of the security alert on August 13, 2023, Digital Alpha immediately contacted Ladak for an explanation as to why he downloaded the files and remind him of the Company's policies concerning downloading confidential information. Ladak evaded Digital Alpha's attempts to contact him for nearly two days. When he finally responded on August 15, 2023, Ladak admitted he downloaded the files and stated he wanted to be able "to talk intelligently" about his work at the Company to future employers. He then claimed he had deleted everything he downloaded from his personal devices.

24.     Despite his understanding that his conduct was clearly wrong, Ladak proceeded to download another batch of confidential and proprietary documents and files on August 17 and August 23. In total, Ladak downloaded over 700 files following notification of his termination. He has since refused to return Digital Alpha's equipment or otherwise allow Digital Alpha to take the necessary steps to ensure that he is not in possession of its trade secrets and confidential information.

25.     Through this conduct, Ladak has demonstrated that he cannot be trusted. Indeed, as further evidence of this, Ladak did not fulfill his agreement to work the remaining two weeks of his employment or assist with transitioning the matters he was responsible for to other employees.

26.     To date, Ladak has failed to return the computer issued to him by Digital Alpha, or turn over the Dell laptop he subsequently used for Digital Alpha work for analysis so that Digital Alpha can ensure its trade secrets and confidential information have been completely and irretrievably deleted from Ladak's devices and digital storage, and that its Confidential Information has not been shared with any unauthorized party.

27.     Instead, Ladak is now making a specious demand on Digital Alpha for additional pay, including the bonus he did not earn (as explained to him months ago) and other unearned and unvested benefits.

28.     Absent the Court's intervention, Digital Alpha has no way to independently verify that Ladak actually deleted and retained no copies of its trade secrets and other confidential information without access to its own equipment (that Ladak refuses to return) as well as Ladak's personal devices and/or digital storage, which he admitted to downloading the files to.

29.     Left unchecked, Ladak could quite easily make use of Digital Alpha's trade secrets, and confidential and proprietary information for the benefit of himself and/or a new employer, which will no doubt be in the financial industry and potentially even a direct competitor of Digital Alpha.

30.     Ladak's conduct is a breach of his Employment Agreement as well as the Federal Defend Trade Secrets Act; this unlawful conduct can severely and negatively impact Digital Alpha's business and, potentially its portfolio companies' businesses. Digital Alpha, therefore, seeks a temporary restraining order and other injunctive relief against Defendant to prevent irreparable harm for which there is no adequate remedy at law.

31.     Defendant's brazen refusal to return Digital Alpha's company equipment and refusal to allow it to take the necessary steps to ensure its trade secrets, and confidential and proprietary information has not been retained, shared, manipulated or otherwise misappropriated leaves Digital Alpha no choice but to file this lawsuit seeking immediate and permanent injunctive relief to prevent further irreparable harm to Digital Alpha's reputation and its business. In doing so, Digital Alpha does not intend to waive the arbitration provisions of the Employment Agreement. Rather, Digital Alpha acknowledges that in order to secure injunctive relief (i.e., enforcement of the restrictive covenants) it has to file suit with the Court and set forth the claims below, but that any determination of the   underlying case merits and damages will be subject to resolution by an arbitrator consistent with the arbitration agreement. *See Quest Diagnostics Inc. v. Elarja*, No. 2:22-cv-00647-GMN-EJY, 2023 U.S. Dist. LEXIS 5794, at *4-5 (D. Nev. Jan. 11, 2023).

**<u>FIRST CLAIM FOR RELIEF</u>**
**(Defend Trade Secrets Act, 18 U.S.C. § 1831 *et seq*.,)**

32.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

33.     The federal Defend Trade Secrets Act of 2016 ("DTSA") forbids threatened and actual misappropriation of trade secrets "if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." *See* 18 U.S.C. § 1832, *et seq.*

34.   "Trade secrets" are broadly defined under the DTSA to include "all forms and types of financial, business, scientific, technical, economic or engineering information."

35.   Digital Alpha owns and possesses certain confidential, proprietary, and trade secret information, as alleged and described above. This confidential, proprietary, and trade secret information relates to services that are used, sold and/or ordered in, or that are intended to be used, sold, and/or ordered in, interstate or foreign commerce.

36.   Digital Alpha derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means. Digital Alpha has taken, and continues to take, reasonable measures to keep that information secret and confidential. These measures include, but are not limited to, password-protecting this information, limiting the dissemination of information to certain employees, promulgating policies governing access to, and the handling and use of such information, and entering into confidentiality and non-disclosure agreements with certain employees.

37.   At the outset of their employment, Digital Alpha requires employees to sign an Employment Agreement including a nondisclosure and confidentiality clause that survives termination of employment. Digital Alpha also requires its employees to comply with its policies and procedures related to handling of confidential, nonpublic, or sensitive information.

38.   During his employment with Digital Alpha, Ladak had access and exposure to and utilized confidential and proprietary information that constituted Digital Alpha's trade secrets. As described above, this included, but was not limited to, information regarding Digital Alpha's Portfolio Companies, prospective target companies, its bidding and marketing strategies, its pricing models, and proposals and quotes.

39.   Without Plaintiff's consent, and then in direct contradiction to Digital Alpha's express directive not to download company information, Defendant misappropriated Plaintiff's confidential information and trade secrets in an improper and unlawful manner as alleged herein, and thereby committed one or more acts of actual or threatened misappropriation of trade secrets within the meaning of the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 et seq.

40.     Defendants' conduct as alleged above constitutes misappropriation of Digital Alpha trade secrets under the Defend Trade Secrets Act, 18 U.S.C. §§ 1836 *et seq.*

41.     As a direct and proximate result of Defendant's conduct, Digital Alpha has suffered, and if the conduct is not enjoined, will continue to suffer, harm.

42.     Due to Ladak's unlawful conduct, Digital Alpha is entitled to an injunction based on actual and threatened misappropriation as set forth in 18 U.S.C. § 1836(b)(3)(A)(i). Further, due to the irreparable harm that Digital Alpha has suffered and will continue to suffer as a result of Defendant's unlawful actions, Digital Alpha is entitled to a preliminary and permanent injunction (a) prohibiting Defendant from (i) any further acquisition, use or disclosure of Digital Alpha's confidential information and trade secrets, (ii) offering or providing any services developed, designed, or improved through the use of Digital Alpha's trade secrets, (iii) engaging in any further dealings of any kind with Digital Alpha's portfolio companies, investors, agents, and (iv) engaging in any business with Digital Alpha's Portfolio Companies, investors, agents  that it would not have but for the misappropriation of Digital Alpha's trade secrets; and (b) ordering the disgorgement and the immediate return of all of Digital Alpha's confidential information and trade secrets in Ladak's possession, custody or control.

43.     Digital Alpha requests that the Court take affirmative action to protect its trade secrets, as set forth in 18 U.S.C. § 1836(b)(3)(A)(ii), including by ordering the inspection of Ladak's computers, personal and business USB and electronic storage devices, smartphones, email accounts, "cloud"-based storage accounts, and mobile phone call and message history to determine the extent, if any, that Digital Alpha's trade secrets were wrongfully taken and/or disseminated to others.

44.     Ladak's misappropriation and disclosure of Digital Alpha's trade secrets entitles Digital Alpha to monetary damages, fees, and costs, as provided in 18 U.S.C. § 1836(b)(3)(B).

45.     Defendants' misappropriation of Digital Alpha's trade secrets was willful and malicious and was undertaken for the purpose of harming Digital Alpha and therefore it seeks exemplary and punitive damages as set forth in 18 U.S.C. § 1836(b)(C).

### SECOND CLAIM FOR RELIEF
#### (Nevada Uniform Trade Secrets Act – N.R.S. § 600A.010 *et seq.*)

46.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

47.     Digital Alpha's confidential, proprietary, and trade secret information includes primary market research and expertise, commercial due diligence and underwriting analyses, valuation frameworks and analyses and legal terms and conditions negotiated as part of acquisitions and divestitures of portfolio companies. In addition, Digital Alpha's confidential, proprietary, and trade secret information includes from its portfolio companies' customer lists, information, pricing, formulas, compilations, techniques, systems, designs, intellectual property and other such information.

48.     Digital Alpha has invested significant time, effort and resources to develop its confidential, proprietary, and trade secret information.

49.     Digital Alpha derives independent economic value from the fact that its confidential, proprietary, and trade secret information is not generally known to the public and not readily ascertainable through proper means. Digital Alpha has taken, and continues to take, reasonable measures to keep that information secret and confidential. These measures include, but are not limited to, password-protecting this information, limiting the dissemination of information to certain employees, promulgating policies governing access to, and the handling and use of such information, and entering into confidentiality and non-disclosure agreements with certain employees.

50.     At the outset of their employment, Digital Alpha requires employees to sign an Employment Agreement including a nondisclosure and confidentiality clause that survives termination of employment. Digital Alpha also requires its employees to comply with its policies and procedures related to handling of confidential, nonpublic, or sensitive information.

51.     During his employment with Digital Alpha, Ladak had access and exposure to and utilized confidential and proprietary information that constituted Digital Alpha's trade secrets. As described above, this included, but was not limited to, information regarding Digital Alpha's

Portfolio Companies, target companies, its bidding and marketing strategies, its pricing models, and proposals and quotes.

52.     Digital Alpha's confidential, proprietary, and trade secret information provides it with competitive advantages that if known would provide commercial or economic value from their disclosure to or use by others.

53.     Ladak has knowledge of Digital Alpha's protective measures and indeed, was reminded of his duties of confidentiality and non-disclosure at the time of his termination and again after the inappropriate downloading was discovered and addressed with him.

54.     Ladak was well aware that Digital Alpha treated its customer information such as financial and historical data, projections, assessment and analysis of market performance and other such information, as trade secrets.

55.     At all relevant times, Ladak had a duty to maintain the secrecy of Digital Alpha's trade secrets. However, in violation of this duty and applicable law, Ladak downloaded and potentially disclosed that information to others, and by doing so misappropriated Digital Alpha's trade secrets. NRS 600A.030(2).

56.     During his employment with Digital Alpha, Ladak had access to confidential and proprietary information that constituted Digital Alpha trade secrets.

57.     Ladak acquired and used, or likely intends to use, Digital Alpha's confidential, proprietary, and trade secret information through improper means, including, but not limited to downloading electronic files without Digital Alpha's knowledge or consent. Indeed, Ladak had a duty to preserve the secrecy of Digital Alpha's confidential information and trade secrets and a duty not to use or disclose it.

58.     Defendant's conduct as alleged above constitutes misappropriation of Digital Alpha's trade secrets under the Nevada Uniform Trade Secrets Act, NRS 600A.030, *et seq.*

59.     Based on the foregoing allegations, Digital Alpha is entitled to recover from Ladak all monetary damages sustained as a result of his misappropriation, including the actual loss caused by the misappropriation and any unjust enrichment to Ladak stemming from the wrongful acquisition and use of Digital Alpha valuable trade secrets.

60.     Based on information and belief, and in view of the foregoing allegations, Defendant's misappropriation of Digital Alpha's trade secrets was and is willful and malicious. Accordingly, Digital Alpha should be granted exemplary damages and punitive damages, unjust enrichment damages and attorneys' fees pursuant to NRS 600A.040-060.

61.     Due to the irreparable harm that Digital Alpha has suffered and will continue to suffer as a result of Defendant's unlawful actions, Digital Alpha is entitled to a preliminary and permanent injunction (a) prohibiting Defendants from (i) any further acquisition, use or disclosure of Digital Alpha's confidential information and trade secrets, (ii) offering or providing any services developed, designed, or improved through the use of Digital Alpha's trade secrets, (iii) engaging in any further dealings of any kind with Digital Alpha's Portfolio Companies, investors, agents, and (iv) engaging in any business with Digital Alpha's Portfolio Companies, investors, agents that it would not have but for the misappropriation of Digital Alpha's trade secrets; and (b) ordering the disgorgement and the immediate return of all of Digital Alpha's confidential information and trade secrets in the possession, custody or control of any the Defendants.

62.     Digital Alpha has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

### THIRD CLAIM FOR RELIEF
#### (Breach of Contract)

63.     The allegations set forth in the preceding paragraphs are incorporated by reference as though fully set forth herein.

64.     The Employment Agreement between Digital Alpha and Ladak is a valid and binding contract for which Ladak received adequate consideration.

65.     Digital Alpha has performed all of its obligations under the Agreement and Defendant Ladak has not been excused from performing his obligations.

66.     The Agreement prohibits Ladak from disclosing or disseminating to any other person, organization or entity or otherwise using, disclosing, disseminating, and/or employing any of Digital Alpha's confidential information or trade secrets.

67.     Defendant breached the Agreement by removing, disclosing, and using Digital Alpha's confidential information and trade secrets including, but not limited to, confidential information regarding Digital Alpha's Portfolio Companies, target companies, its bidding and marketing strategies, its pricing models, and proposals and assessments.

68.     As a direct and proximate result of Defendant's breach of the Agreement, Digital Alpha has suffered and will continue to suffer damages.

69.     Digital Alpha has been required to retain the services of an attorney to prosecute this action and therefore, is entitled to an award of reasonable attorneys' fees and costs incurred herein.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Digital Alpha requests that judgment be entered against Defendant Ladak as follows:

1.      For equitable and injunctive relief to:

   a. enjoin Defendant and those acting in concert or participation with him from directly or indirectly, copying, transferring, using or disclosing Digital Alpha's confidential, proprietary, and trade secret information;

   b. require Defendant to immediately return any and all property of Digital Alpha, including but not limited to: (i) all Digital Alpha confidential, proprietary, and trade secret information including, but not limited to, the files he downloaded; (ii) computers provided to Defendant by Digital Alpha or which Plaintiff procured for use in the course of his employment with Digital Alpha; (iii) all external storage devices and cloud accounts containing Digital Alpha confidential, proprietary, and trade secret information; (iv) any other Digital Alpha -owned devices or equipment; and, (v) all copies, backups, and duplicates of the Digital Alpha's electronic data;

   c. permit the independent verification by a neutral forensic expert that all confidential, proprietary, and trade secret information of Digital Alpha has been deleted from Defendant's email accounts, electronic storage accounts and devices; and

     d.  require Defendant to preserve and not destroy any and all evidence relating to this matter, including, but not limited to, documents and/or communications (including any emails, texts or other messages) concerning (i) Ladak's employment with or work for Defendant hereto, (ii) Defendant's contacts and dealings with any of Digital Alpha's Portfolio Companies, investors, agents, (iii) Defendant's acquisition, disclosure, use or possession of any of Digital Alpha's confidential and/or proprietary information or trade secrets;

2.    That following the Court's resolution of Plaintiff's request for a temporary restraining order and injunctive relief, that this matter proceed in arbitration in accordance with the arbitration clause between Plaintiff and Defendant as to determination of the underlying merits of Plaintiff's claims and damages;

3.    For damages associated with Defendant's unlawful actions;

4.    For attorneys' fees and costs incurred herein;

5.    For exemplary damages; and

6.    For such other and further relief as the Court may deem just and proper.

DATED this 28th day of August, 2023.

JACKSON LEWIS, P.C.

*/s/ Joshua A. Sliker*

JOSHUA A. SLIKER, ESQ.
Nevada Bar No. 12493
300 S. Fourth Street, Ste. 900
Las Vegas, Nevada 89101

*Attorneys for Plaintiff*
*Digital Alpha Advisors, LLC*